Jamilla Moore (SBN 177733)
The Law Office of Jamilla Moore
P.O.B. 582173
Elk Grove, CA 95758
(415) 728-9808
jmoorelawoffice@gmail.com

Attorney for Debtors

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| ***IN RE MICHAEL D. DUNN* [xx6648] / *MARIA DO CARMO DUNN* [xx0622]** | **CASE NO. 11-30190**<br>**Chapter 7** |
| **MICHAEL D. DUNN and MARIA DO CARMO DUNN**<br><br>**Plaintiffs/Debtors**<br><br>**v.**<br><br>**Perris Industrial, LLC; Briarwood Homes, LLC; Valley Foreclosure Services, LLC; Heller Development Company; Liberty Realty; Richard Heller, an individual; Kolleen Kelley, an individual; Eve Farr, an individual; Kimberly Sharp; an individual; DOES 1-100**<br><br>**Defendants** | **Adversary Proceeding No. _______** |

**COMPLAINT**

This is an adversary proceeding pursuant to Rule 7001, subsections (1) and (2) of the Federal Rules of Bankruptcy Procedure to determine the validity, priority or extent of Plaintiffs' and Defendants' respective interests in the real property located at 5306 Spring Canyon Street, North Las Vegas, Clark County, Nevada 89081 [Lot 9 in block one of Washburn-Bruce, as shown by map thereof on file in Book 102 of Plats,

Case: 11-03038 Doc# 1 Filed: 02/27/11 Entered: 02/27/11 20:47:48 Page 1 of 26

Page 39, and amended by certificate of Amendment recorded November 16, 2001 in Book 20011116 as Document No. 01181; July 17, 2002 in Book 20020717 as Document No. 02398; and July 24, 2002 in Book 20020724 as Document No. 00904 in the Office of the County Recorder of Clark County, Nevada], hereinafter referred to as the "subject property").

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this lawsuit because it involves a core matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §§ 157(a), (b)(2)(A), (b)(2)(B), (b)(2)(G).

2. This adversary proceeding relates to *In re Michael D. Dunn and Maria Do Carmo Dunn*, a Chapter 7 case pending before the United States Bankruptcy Court for the Northern District of California, Oakland Division, docketed as case number 11-30190.

3. Venue for this matter is proper pursuant to 28 U.S.C. § 1409.

4. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

**PARTIES**

5. Plaintiffs are the Petitioners/Debtors in *In re Michael D. Dunn and Maria Do Carmen Dunn*, a Chapter 7 case pending before the United States Bankruptcy Court for the Northern District of California, San Francisco Division, docketed as case number 11-30190. Plaintiffs are the owners/occupiers of the subject property. Plaintiff Michael Dunn is a disabled person protected by the American Disabilities Act and analogous state statutes. Plaintiff Maria Do Carmo Dunn speaks Portuguese as her first written and spoken language and has limited ability to understand written and spoken English; she also is a

disabled person.

6. At all times mentioned herein, all Defendants were conducting interstate business with Plaintiffs. From 2008 through the present time, all Defendants have conducted business with Plaintiffs in Clark County, Nevada; Contra Costa County, California; and San Francisco County, California.

7. In 2008, when the contracts, transactions and communications at issue herein were first initiated, Plaintiffs resided in the State of California. From 2008 through the present time, the subject property has been Plaintiffs'owner occupied residence. During the same period; Plaintiffs concurrently have been parties to a California lease agreement that was executed years prior to their purchase of the subject property in 2008.

8. From approximately January 2008 through approximately September 2010, Plaintiffs were in residence at the subject property. From approximately September 2010 through the present, Plaintiffs are temporarily residing in California while they both obtain various medical services. Plaintiffs intend to resume owner occupation of the subject property when they are medically able to do so.

9. At all times mentioned herein, Defendant Perris Industrial, LLC, was a mortgage lender conducting interstate business from its corporate headquarters at 18520 Burbank Blvd., #200, Tarzana, California 91356.

10. At all times mentioned herein, Defendant Briarwood Homes, LLC, was a mortgage lender conducting interstate business from its corporate headquarters at 18520 Burbank Blvd., #200, Tarzana, California 91356.

11. At all times mentioned herein, Defendant Heller Development Company, was a realtor, real estate agent and/or real estate broker conducting interstate business from its corporate headquarters at 2620 Regatta Drive, #102, Las Vegas,

Nevada 89128.

12. At all times mentioned herein, Defendant Liberty Realty, was a realtor, real estate agent and/or real estate broker conducting interstate business from its corporate headquarters at 2920 South Durango Blvd., Las Vegas, NV 89117.

13. At all times mentioned herein, Defendant Valley Foreclosure Services, was the foreclosing trustee for the subject property and was conducting interstate business from its corporate headquarters at 1880 E. Warm Springs Rd. #100, Las Vegas, NV 89119.

14. At all times mentioned herein, Defendant Richard Heller was "Manager" or otherwise an executive, employee, agent and/or representative of Heller Development Company, and also as an individual was as a realtor, real estate agent and/or real estate broker conducting interstate business from its corporate headquarters at 18520 Burbank Blvd., #200, Tarzana, California 91356 and 2620 Regatta Drive, #102, Las Vegas, Nevada 89128.

15. At all times mentioned herein, Defendant Kolleen Kelley was an executive, employee, agent and/or representative of Liberty Realty, and also as an individual was as a realtor, real estate agent and/or real estate broker conducting interstate business from its corporate headquarters at 2920 South Durango Blvd., Las Vegas, NV 89117.

16. At all times mentioned herein, Defendant Eve Farr was an executive, employee, agent and/or representative of Liberty Realty, and also as an individual was as a realtor, real estate agent and/or real estate broker conducting interstate business from its corporate headquarters at 2920 South Durango Blvd., Las Vegas, NV 89117.

17. At all times mentioned herein, Defendant Kimberly Sharp was an executive, employee, agent and/or representative of Liberty Realty, and also as an

individual was as a realtor, real estate agent and/or real estate broker conducting interstate business from its corporate headquarters at 2920 South Durango Blvd., Las Vegas, NV 89117.

18. Plaintiff is not aware of the true names and capacities of the defendants sued as DOES 1 through 250, inclusive, and therefore sues such defendants by such fictitious names. Each of these fictitiously named defendants is responsible in some manner for the activities alleged in this Complaint. Plaintiff will amend this Complaint to add the true names of the fictitiously named defendants once they are discovered.

19. The defendants identified in paragraphs 1 through 18, *supra*, shall hereinafter be referred to collectively as "Defendants."

20. Whenever reference is made in this Complaint to any act of any Defendant that allegation shall mean that each defendant acted individually and jointly with the other Defendants.

21. Any allegation about any acts of any corporate or other business entity means that the corporation or business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the scope of their authority and/or employment. Defendants acted in many and conflicting capacities throughout the transactions underlying this complaint, purporting to be different things at different times – lender or note holder, loan servicer, debt collector, seller of the property, all to enable themselves to circument the requiements of law.

22. At all relevant times each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Some or all of the Defendants acted as the agent of the other Defendants and all of the Defendants acted within the scope of their

agency if serving as another's agent.

23. At all relevant times each Defendant knew or should have known that the other Defendants were engaged in or planning to engage in the violations of law alleged in this Complaint. Each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and encouraged, facilitated, or assisted in the commission of the unlawful acts.

24. At all relevant times the Defendants have engaged in a conspiracy, common enterprise and/or common course of conduct, the purpose of which was to engage in the violations of law alleged in this Complaint. This conspiracy, common enterprise and/or course of conduct continues to the present.

25. The violations of law alleged in this Complaint were made by businesses and individuals engaged in interstate commerce, and occurred in part in Contra Costa County, California and in part in Clark County, Nevada.

**BACKGROUND FACTS – ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

26. The events giving rise to the causes of action herein began in approximately January 2008, when employees and/or agents of Defendants duped Michael and Maria Dunn – a permanently disabled and, at the time, medically compromised retired shipworker and his beautician/foster care provider spouse (who speaks Portuguese as her first language, and is also disabled) into signing signing two mortgage promissory notes and deeds of trust for real property that, then and now, Debtors are informed and have reason to believe is worth less than the value of the mortgage loans. Plaintiffs were led into signing two promissory notes deeds of trust that established interest only payments, and bound Plaintiffs to – within three years and three months – secure new mortgage financing or come up with a lump

Case: 11-03038 Doc# 1 Filed: 02/27/11 Entered: 02/27/11 20:47:48 Page 6 of 26

sum payment of over $270,000 during or before April 2011. Defendants knew or should have known that this house of cards would fall even if the national mortgage crisis of the past two years had not occurred. Defendants purposefully led the Dunns into the foreclosure that Defendants Perris, Heller, and/or Valley now seek to quickly implement with respect to one of the promissory notes.

27. On January 4, 2008, Defendant Heller transmitted a facsimile "counteroffer" on the subject property to Defendants Liberty Realty and Farr. On January 7, 2008, Defendants and Plaintiffs executed a document purporting to be "escrow instructions & general provisions" with the following "additional terms": "Seller to carry 1st trust deed for a period of 40 months in the amount of $135,000 and a second trust deed of $134,000 both @ 6.5% interest only amortized over 30 years paid on the fifteenth (15) of each month. No prepayment penalty. If payment paid after 25th, 5% penalty on payment amount of unpaid interest for the month. Buyer to pay the first 6 months interest for both the 1st & 2nd trust deeds at COE which is to be released to seller at COE so first monthly payment due 7/15/08. Property to have no liens or trust deeds against property at COE. Commencing on July 15th, buyer is to pay one (1%) of the unpaid principal balance monthly applied to reduce principal balance. Any month the 1% is not paid will result in a negative amortization and due on the 40th month."

27. On January 10, 2008, Plaintiffs and Defendant Perris International, LLC, executed a promissory note and deed of trust for the subject property for $135,000. The rate for initial six months of the loan was 6.5%; commencing with the July 2008 payment (7 months later), the note rate rose to 7.5%. The note established interest only payments of $843.75 per month for approximately three years. A "Rider to Deed of Trust Secured By Deed of Trust" contains the following terms: "Effective with the July 2008 payment, borrowers may elect to make monthly interest payments at a rate of 6.50%, for a payment of $731.25. However,

Case: 11-03038 Doc# 1 Filed: 02/27/11 Entered: 02/27/11 20:47:48 Page 7 of 26

borrowers acknowledge that this monthly interest payment of $731.21, IS NOT sufficient to pay all of the monthly interest that will accrue on the Note. Additionally, the unpaid monthly interest will be added to the principal amount of the Note each month, and interest at the rate set forth in the Note will accrue on the unpaid interest. Borrowers acknowledge that if all of the monthly payments are made on time, at the 7.50% note rate, the principal amount of the Note on the Maturity Date will be $135,000.00." This rider does not contain the following material term that is found in the escrow instructions & general provisions : "Commencing on July 15th, buyer is to pay one (1%) of the unpaid principal balance monthly applied to reduce principal balance. Any month the 1% is not paid will result in a negative amortization and due on the 40th month."

27. On January 9, 2008, Plaintiffs and Defendant Briarwood Homes, LLC, executed a promissory note and deed of trust for the subject property for $134,000. The rate for initial six months of the loan was 6.5%; commencing with the July 2008 payment (7 months later), the note rate rose to 7.5%. The note established interest only payments of $837.50 per month for approximately three years. A "Rider to Deed of Trust Secured By Deed of Trust" contains the following terms: "Effective with the July 2008 payment, borrowers may elect to make monthly interest payments at a rate of 6.50%, for a payment of $725.83. However, borrowers acknowledge that this monthly interest payment of $725.83, IS NOT sufficient to pay all of the monthly interest that will accrue on the Note. Additionally, the unpaid monthly interest will be added to the principal amount of the Note each month, and interest at the rate set forth in the Note will accrue on the unpaid interest. Borrowers acknowledge that if all of the monthly payments are made on time, at the 7.50% note rate, the principal amount of the Note on the Maturity Date will be $134,000.00." This rider does not contain the

following material term that is found in the escrow instructions & general provisions : "Commencing on July 15th, buyer is to pay one (1%) of the unpaid principal balance monthly applied to reduce principal balance. Any month the 1% is not paid will result in a negative amortization and due on the 40th month."

28. Plaintiffs made timely payments on both loans until approximately August 2010, when Mrs. Dunn's poor health rendered her unable to work. On October 20, 2010, Defendants recorded a notice to default and election to sell the subject property. On January 18, 2011, Plaintiffs filed a Chapter 7 bankruptcy petition, electing to retain the subject property.

29. Defendants acted in many and conflicting capacities throughout the transactions underlying this complaint, purporting to be different things at different times – lender or note holder, loan servicer, debt collector, seller of the property, all to enable themselves to circument the requiements of law. Plaintiffs were victims of fraud and misrepresentation with respect to the inception, negotiation and execution of the two promissory notes and deeds of trust for the subject property, and are now subject to the wrongful foreclosure intended by Defendants at the inception of the deed and loan contracts and throughout the period of the mortgage. Plaintiffs, who were inexperienced with real estate transactions and disabled, relied upon the false representations and material misrepresentations of Defendants. Plaintiffs are informed and believe that they were victims of fraudulent appraisal practices that inflated the value of the property and thereby increased the monthly payments; Defendants charged and obtained improper fees for placement of the loans as sub-prime; the combined loans exceeded the reasonable expected value of the property at that time and in the forseeable future based upon expected and/or reasonably forseeable market changes; the loans paid excessive commissions, excessive appraiser fees and

lender service fees, and the amount of such commissions and identity of the recipients were not disclosed to Plaintiffs.

30. As a result of Defendants' acts and omissions, Plaintiffs are on the verge of losing their possession and ownership of the subject property; lost equity in the home, their credit rating and/or history has been damaged, they have been deprived of access to equity lines of credit, second mortgages and other loans previously available to owners of primary residences, and they have incurred other material damages including but not limited to reduced availability of goods and services tied to credit ratings. Additionally, as a result of Defendants' acts and omissions, Defendants illegally took from Plaintiff thousands of dollars in interest payments and fees. Defendants acted outrageously and persistently with actual malice in performing the acts alleged herein. Accordingly, Plaintiff is entitled to exemplary and punitive damages in a sum according to proof and to other such relief as requested in the Prayer for Relief.

## CLAIMS FOR RELIEF

The following Causes of Action are asserted against the Defendants herein without prejudice to any rights Plaintiff may have, or which this Court may grant to Plaintiff, to assert additional causes of action or allegations based on facts disclosed in documents or other information made available to the Plaintiff in the future or developed as a result of discovery or otherwise.

## FIRST CAUSE OF ACTION
## ABUSE OF A DISABLED INDIVIDUAL
**[Against All Defendants]**

31. Plaintiff realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

32. Plaintiff alleges that Defendants' actions arising from and related to the solicitation and execution of the August 23, 2007 reverse mortgage constitute abuse of disabled African-American individuals (Plaintiffs Michael D. Dunn and Maria Do Carmo Dunn), exploitation and discrimination in violation of, *inter alia*, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, which is commonly known as the federal Fair Housing Act (FHA ); and the Americans Disabilities Act (see 42 USC §3001 et seq.; 42 USC §3002 et seq; 42 USC §12101 et seq. Defendants are liable for treble damages and penalties because Defendants knew their conduct was directed at disabled citizens. Defendants' conduct caused a disabled citizens to suffer substantial loss of property and assets. Plaintiffs are disabled African-American citizens more vulnerable than other members of the public to Defendants' conduct because of his age, disabilities, impaired health and cognitive functioning; and Plaintiffs actually suffered substantial economic damages as a result of Defendant's conduct.

33. Defendants knew or had reason to know that Plaintiffs were unsophisticated in real estate lending practices, and had no or a very limited understanding of the terms of the subject real estate loan contract. Thus Defendants knew or had reason to know that, because Plaintiffs were unsophisticated in real estate lending practices, he would reasonably rely upon their representations regarding Plaintiffs' qualifications for and ability to honor their legal obligations as he was deciding whether to execute the mortgage loan contracts with Defendants.

34. Defendants made misrepresentations about the subject property mortgages and deeds of trust that they knew were likely to be deceptive and misleading to Plaintiffs, failed to disclose all material features, facts, risks and/or attributes of the loans and deeds. Defendants gained the personal trust of Plaintiffs, had

Case: 11-03038   Doc# 1   Filed: 02/27/11   Entered: 02/27/11 20:47:48   Page 11 of 26

access to their personal financial information and, through their unscrupulous sales practices, induced Plaintiffs to enter into a the loan and deed contracts transaction knowing they would be misled and deceived by those sales practices.

35. Defendants used misleading, incomplete, excessively complex, confusing and vague form documents and terms of real estate practice that could not be understood by Plaintiffs.

36. Without conducting any meaningful negotiations, Defendants used their business acumen and superior bargaining power – and the above-described form documents – to maneuver Plaintiffs into signing adhesive contracts that they did not understand.

37. Consequently, Defendants and each them in their capacity as agents or representatives of each other, engaged in elder abuse and financial abuse by intentionally made false representations to, and concealed material facts regarding the terms, nature and effect of the subject loan. Because Defendants' possess superior knowledge and special information and expertise regarding mortgage loan financing transactions, their representations to Plaintiffs must be treated as ones of material fact.

38. Plaintiffs relied upon Defendants' false and incomplete representations to their legal and economic detriment and have as a direct and proximate result of Defendants' acts and omissions suffered economic and additional damages according to proof. Additionally, because Defendants and each of them acted with malice and oppression, Plaintiffs are entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE AND NEGLIGENCE PER SE**
**[Against All Defendants]**

39. Plaintiffs reallege and incorporate by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

Case: 11-03038 Doc# 1 Filed: 02/27/11 Entered: 02/27/11 20:47:48 Page 12 of 26

40. At the inception of the promissory notes and deeds of trust in 2008, Defendants owed Plaintiffs a legal duty to competently, accurately and reliably communicate with Plaintiffs regarding all matters pertaining to the processing and approval of Plaintiffs' loan application(s), including the duty to negotiate and execute the transaction in understandable written English and in a language best understood by each Plaintiff. Yet, Defendants provided Plaintiffs with contractual agreements that were written only in English. Defendants did not provide Plaintiffs with documents translated into the language known to Mrs. Dunn, Portuguese.

41. Defendants owed Plaintiffs a legal duty to refrain from commencing an illegal foreclosure process against a greatly inferior and profoundly weaker party who, to their detriment, relied upon representations made by Defendants' agents, employees and representatives vis a vis the deeds of trust and promissory notes.

42. Defendants owed Plaintiffs a legal duty to comply with California and Nevada statutes and perform their duties with honesty, professionalism, integrity, due diligence and skill when negotiating and executing and assigning and substituting trustees and/or beneficiaries with respect to loan modification, mortgage loan and/or deed of trust contracts with and on behalf of borrowers such as Plaintiffs. Rather, Defendants have committed multiple acts and omissions to breach their legal duties to Plaintiffs, including but not limited to all acts and omissions alleged *supra*, and fraudulently concealed institutionalized fraud begun in approximately 2008 through the present was willful, pervasive and strategic through mortgage loan practices implemented with the knowledge of and/or at the direction of all Defendants' corporate executives.

43. The losses to Plaintiffs described herein were the proximate and foreseeable result of Defendants' intentionally concealed plan of executing fraudulent sales for more than actual value of the mortgage notes and deeds of trust on the subject

property owned by Plaintiffs and others similarly situated.

44. In verbal and written communications with Plaintiffs, in their publications and contracts and/or on their websites employees and/or agents of Defendants made material misleading statements of fact to Plaintiffs that induced them to enter profoundly disadvantageous mortgage loan contracts designed to lead to an inevitable foreclosure. Additionally, Defendants engaged in fraud and fraudulent concealment in the execution of the loan and/or deed origination documents. .

45. The foreseeability of harm to the Plaintiff from Defendants' acts and failures to act under the peculiar circumstances presented by this case is a question of fact. Here, the wrongful foreclosure of Plaintiffs' subject property was a reasonably foreseeable result of the acts and omissions of Defendants as set forth herein and at trial according to proof.

**THIRD CAUSE OF ACTION**
**FRAUD AND FRAUDULENT MISREPRESENTATION**
**[Against All Defendants and DOES 1-20]**

46. Plaintiffs reallege and incorporate by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

47. Defendants and DOES 1-20 (all and each of them) as agents and/or employees and/or representatives of each other had a legal duty to competently, accurately and reliably communicate with Plaintiff regarding all matters pertaining to the processing and approval of Plaintiff's 2008 loans and deeds of trust. Defendants owed Plaintiffs a legal duty to competently, accurately and reliably communicate with Plaintiffs regarding all matters pertaining to all foreclosure activities pertaining to the subject property.

48. Defendants and DOES 1-20 (all and each of them) as agents and/or employees and/or representatives of each other had a legal duty to provide Plaintiff

Case: 11-03038 Doc# 1 Filed: 02/27/11 Entered: 02/27/11 20:47:48 Page 14 of 26

with accurate, truthful and complete information regarding the terms of their mortgage loan for purchase of the subject property.

49. Defendants knew or had reason to know that Plaintiffs were both unsophisticated in real estate lending practices and disabled, and that Mrs. Dunn spoke Portuguese as her primary language, thus both Plaintiffs a very limited understanding of the detailed terms of the subject promissory note and deed of trust contracts. Thus Defendants knew or had reason to know that, because Plaintiffs were unsophisticated in mortgage lending practices, they would reasonably rely upon Defendants' representations.

50. Further, Defendants failed to adequately inform Plaintiffs of the all material terms and foreseeable conditions and risks associated with executing the loan contract, including but not limited to foreseeable future conditions that would cause the interest rate and/or the loan balance to increase, and foreseeable future conditions that would cause a loss in equity.

51. Defendants used misleading, incomplete, excessively complex, confusing and vague form documents that could not be understood by Plaintiffs. Without conducting any meaningful negotiations, Defendants used their business acumen and superior bargaining power – and the above-described form documents – to maneuver Plaintiffs into signing an adhesive contract that they did not understand.

52. In addition, Defendants engaged in mortgage loan practices implemented with the knowledge of and/or at the direction of their corporate executives to create false and inflated property appraisals, and then use these false valuations to induce Plaintiffs and other borrowers into mortgage loans on high-risk terms.

53. Consequently, Defendants and each them in their capacity as agents or representatives of each other, intentionally made false representations to, and concealed material facts from Plaintiffs. Because Defendants' possess superior knowledge and special

information and expertise regarding mortgage loan financing transactions, their representations to Plaintiffs must be treated as ones of material fact. Defendants committed fraud because they made knowing and intentionally false representations to induce Plaintiffs to reasonably rely thereon, and there was resulting harm from that reliance. Defendants committed constructive fraud because their acts, omissions and/or concealments involved a breach of a legal or equitable duty, trust or confidence.

54. Plaintiffs relied upon Defendants' false and incomplete representations to heir legal and economic detriment and have as a direct and proximate result of Defendants' acts and omissions suffered economic and additional damages according to proof. Additionally, because Defendants and each of them acted with malice and oppression, Plaintiffs are entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**

**[Against All Defendants]**

55. Plaintiffs realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein. Defendants and DOES 1-20 (all and each of them), as the original lender(s) and/or broker(s) and/or trustee(s) and/or servicer(s), had a legal duty to provide Plaintiffs with accurate, truthful and complete information regarding their eligibility for the mortgage loan for purchase of the subject property.

56. Additionally, during the course of the 2008 negotiations related to and execution of the underlying loan and deed of trust transactions, and in all subsequent contacts and communications, Plaintiffs relied upon and ultimately were harmed by Defendants' fraudulent concealments of material fact related to how her eligibility for mortgage financing would be and was calculated, and/or how the interest rate, principal

Case: 11-03038 Doc# 1 Filed: 02/27/11 Entered: 02/27/11 20:47:48 Page 16 of 26

payments, fees and charges and other material terms of the loan would or could change during the life of the loan. Additionally, Defendants concealed from Plaintiffs risk assessments related to her future ability to perform in accord with these calculations and assessments.

57. Further, at all times mentioned herein, Defendants had and have exclusive knowledge not accessible to Plaintiffs of undisclosed material facts pertaining to their mortgage lending activities. These facts include but are not limited to false and/or negligent appraisals, violation of Defendants' own underwriting guidelines, and the intent to securitize Plaintiffs' mortgage above its actual value.

58. From 2008 and continuing to the present, Defendants' concealment or suppression of material facts has had the same effect as a false representation. Had such disclosures of material fact been made by Defendants, Plaintiffs would have engaged in further negotiations with Defendants to obtain more favorable terms, and/or taken their business elsewhere. Rather, Plaintiffs relied upon Defendants' false and incomplete representations to her legal and economic detriment and has as a direct and proximate result of Defendants' acts and omissions suffered economic and additional damages according to proof. Additionally, because Defendants and each of them acted with malice and oppression, Plaintiffs are entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
## UNLAWFUL BUSINESS PRACTICES

**[Against All Defendants]**

59. Plaintiffs reallege and incorporate by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

60. From 2008 and continuing to the present time, the acts, policies and practices of all Defendants with respect to the subject property – including but not limited to "negotiation" and execution of the mortgage loan contract, purported

assignments of the deed, non-assignments of the promissory note, the misrepresentations and failures to act vis a vis a loan modification or other act to prevent a foreclosure, and the wrongful foreclosure – alleged throughout this Complaint and incorporated by reference herein, constitute unlawful business acts and/or practices within the meaning of Nevada and California Business and Professions Codes.

61.     Each of these unlawful business practices has, at a minimum, damaged Plaintiffs' creditworthiness with resulting financial loss.  This misconduct has also caused Plaintiffs to suffer additional damages according to proof at trial.

62.     The unlawful acts and practices, incorporated by reference herein, present a continuing threat to Defendants' home purchasers.  Plaintiffs have no other remedy at law that will prevent Defendants' misconduct, as alleged herein, from occurring and/or recurring in the future.

**SIXTH CAUSE OF ACTION**
**CONVERSION AND DEMAND FOR ACCOUNTING**
**[Against All Defendants and DOES 1-25]**

63.     Plaintiffs realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

64.      Plaintiffs demand of Defendants an accounting and production of  documents to verify all costs and fees for all matters related to the subject property that have been incurred since the date of trustee sale, the dates and amounts of payments made by Defendants, the dates and amounts of payments made by Plaintiffs, and the current balances for each obligation.

65.     Plaintiff demands the immediate return of the converted funds, as well as interest at the legal rate on the foregoing sum.  Additionally, as a direct and proximate

Case: 11-03038    Doc# 1    Filed: 02/27/11    Entered: 02/27/11 20:47:48    Page 18 of 26

result of Defendants' acts and omissions,

Plaintiff has suffered economic and additional damages according to proof. Further, because Defendants and each of them acted with malice and oppression, Plaintiff is entitled to an award of punitive damages.

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**[Against All Defendants]**

66. Plaintiffs reallege and incorporate by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

67. By engaging in the acts and omissions complained of herein, Defendants intentionally and unreasonably inflicted emotional and/or mental distress upon Plaintiffs. The acts and omissions complained of herein, committed by Defendants and/or their agents, representatives or employees, were such that a reasonable member of the community would find Defendants' conduct and misconduct to be outrageous.

68. Defendants were aware of their acts and omissions complained of herein, yet they proceeded to act or fail to act in conscious or reckless disregard of the high probability of causing emotional distress to Plaintiffs.

69. Plaintiffs suffered severe mental distress, suffering and anguish, including but not limited to manifestations of physical and emotional stress, insomnia, crying, fear, shock, depression and hopelessness. Their distress was and is substantial and enduring.

70. In addition, here the extreme and outrageous character of Defendants' conduct arose from Defendants' abuse of a business relationship with Plaintiffs which gave Defendants actual or apparent authority over Plaintiffs and power to affect Plaintiffs' interests in the subject property.

**EIGHTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**[Against All Defendants]**

71. Plaintiffs realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

72. By engaging in the acts and omissions complained of herein, Defendants negligently and unreasonably inflicted emotional and/or mental distress upon Plaintiffs. The acts and omissions complained of herein, committed by Defendants and/or their agents, representatives or employees, were such that a reasonable member of the community would find Defendants' conduct and misconduct to be outrageous.

73. Defendants willfully violated state and federal law, including but not limited to federal discrimination and predatory lending statues, the business and professions and predatory lending statutes of two states, and engaged in negligent acts and omissions in conscious or reckless disregard of the high probability of causing emotional distress to Plaintiffs.

74 Plaintiffs suffered severe mental distress, suffering and anguish, including but not limited to manifestations of physical and emotional stress, insomnia, crying, fear, shock, depression and hopelessness. Their distress was and is substantial and enduring.

75. In addition, here the extreme and outrageous character of Defendants' conduct arose from Defendants' abuse of a business relationship with Plaintiffs which gave Defendants actual or apparent authority over Plaintiffs and power to affect Plaintiffs' interests in the subject property.

Defendants acted outrageously and persistently with actual malice in performing the acts alleged herein. Accordingly, Plaintiff is entitled to exemplary and punitive damages in a sum according to proof and to other such relief as requested in the Prayer for Relief.

Case: 11-03038 Doc# 1 Filed: 02/27/11 Entered: 02/27/11 20:47:48 Page 20 of 26

**NINTH CAUSE OF ACTION**
**CONSPIRACY TO DEFRAUD and CONVERT**
**[Against All Defendants]**

76. Plaintiffs realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

77. All Defendants had a duty to provide Plaintiffs with accurate, truthful and complete information regarding the subject loan transaction, their loan modification policies and procedures, and their short sale negotiation and approval policies and procedures. Each and all Defendants acted as agents and representatives of each other.

78. From January 2008 and continuing to the present, Defendants have fraudulently misled Plaintiffs into believing that they were qualified for, and capable of performing under the terms of, that mortgage loan contract, and they fraudulently misled Plaintiffs and concealed from them material information vis a vis material terms of the loan contract, as well as the material terms of the Defendants' respective purported transfers of beneficial, trustee and/or ownership interests in the subject property.

79. By committing the acts and/or failures to act, making the representations and engaging in the concealment set forth in all causes of action of this Complaint, these Defendants and each of them acted with a common design intentionally and for the express purpose of inducing Plaintiffs to enter and remain bound by a profoundly disadvantageous mortgage loan contract designed to lead to an inevitable foreclosure.

80. Through Defendants' fraudulent acts and omissions, Defendants have conspired to commit fraud and conversion. Defendants illegally converted Plaintiffs's ownership of and/or rights to the as yet undetermined dollar amount in down payment, costs of mortgage loan and deed application, processing and execution, home purchase fees and costs, and monthly mortgage payments paid to Defendants between January

Case: 11-03038 Doc# 1 Filed: 02/27/11 Entered: 02/27/11 20:47:48 Page 21 of 26

2008 approximately September 2010 by their fraudulent acts, omissions and concealments including but not limited to: fraudulently inducing Plaintiffs to enter a profoundly disadvantageous mortgage loan contract designed to lead to an inevitable foreclosure; engaging in fraud and fraudulent concealment in the execution of the loan and/or deed origination documents; failing to disclose to Plaintiffs the material terms of the Defendants' purported transfers of beneficial, trustee and/or ownership interests, and then foreclosing on and selling the subject property without executing a legal assignment of the original promissory note and deed or trust; refusing to abide by California's non-judicial foreclosure statutes; refusing to offer or meaningfully consider Plaintiffs for loan modification, forbearance or other default avoidance programs.

81.     All  Defendants acts and omissions, as set forth in all causes of action of\ this Complaint (previously incorporated herein by reference) were part of a common design and pattern of practice intentionally and for the express purpose of illegally inflating  Defendants' profits from mortgage loan and mortgage loan securities transactions.

82 .     Defendants' failure in good faith negotiate a loan modification  with Plaintiffs is part of a pattern and practice by these Defendants to promote foreclosures and thereby increase profits.  Each Defendant is an agent and representative of each and every other Defendant with respect to the mortgage, deed of trust, agency, assignment and delegation and/or foreclosure actions at issue in this litigation.

83 .     As part of this business formation and  transfer of assets, Defendants,  with a common purpose and design in the transfer mortgage loan assets – including but not limited to Plaintiffs' mortgage loan, established loan modification and foreclosure policies, processes and procedures with the express purpose of

Case: 11-03038   Doc# 1   Filed: 02/27/11   Entered: 02/27/11 20:47:48   Page 22 of 26

discouraging loan modifications, workouts and forbearances and increasing more-profitable foreclosures.

84 . Plaintiffs are informed and has reason to believe, in designing and implementing their contracts for the transfer and administration of mortgage loan assets (securitized and non-securitized), Defendants acted with a common purpose and design to unfairly inflate their profits by creating internal policies and procedures that illegally prevent and/or interfere with Plaintiffs' and other homeowners' ability to meaningfully participate in home loan modification programs provided through Nevada and federal statute.

85 . Plaintiffs are informed and has reason to believe that Defendants as a matter of pattern and practice receive profits in additional income above the actual purchase price of a home loan in foreclosure. Consequently, none of these Defendants nor their agents and/or representatives and/or co- Defendants have any meaningful intention of conducting home loan modifications or complying with state statutes that promote home loan modifications for individuals such as Plaintiffs. Any loan modification means that Defendants would lose this additional profit.

86 . As a direct and proximate result of Defendants' acts and omissions, Plaintiffs have suffered economic and additional damages according to proof. Additionally, because Defendants and each of them acted with malice and oppression, Plaintiffs are entitled to an award of punitive damages.

## TENTH CAUSE OF ACTION
## UNCONSCIONABILITY
## [Against All Defendants and DOES 1-50]

87 . Plaintiffs reallege and incorporate by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

88 . Defendants were highly experienced mortgage industry professionals



Case: 11-03038 Doc# 1 Filed: 02/27/11 Entered: 02/27/11 20:47:48 Page 23 of 26

who at all times herein had superior bargaining power over Plaintiffs regarding the type of loan that was offered to Plaintiffs; the material terms of that loan including but not limited to the interest rate(s) and repayment schedule(s); and the power of sale and right to foreclose in the event of default.

89 . Defendants prepared the pre-printed form mortgage loan documents that Plaintiffs were required to sign as a condition to obtaining the mortgage and presented these form loan documents to her in a "take it or leave it" manner with no opportunity for Plaintiffs to negotiate the mortgage interest or payment terms.

90. Defendants used misleading, incomplete, excessively complex, confusing and vague form documents that could not be understood by Plaintiffs.

91. Defendants used their business acumen and superior bargaining power – and the above-described form documents – to, without conducting any meaningful negotiations, maneuver Plaintiffs into signing an adhesive contract that they did not understand.

92. The mortgage loan contract for the subject property is oppressive because it has overly harsh and one-sided terms, and because it arose from an inequality of bargaining power that resulted from not engaging in meaningful pre-execution negotiations; consequently, Plaintiffs lacked meaningful choice.

93. The mortgage loan contract for the subject property is a contract of adhesion – it is a standardized contract, imposed upon Plaintiffs without an opportunity to negotiate the terms. The terms of the contract are so unreasonable, unjustified, or one-sided as to shock the conscience, and it reallocates risk in an objectively unreasonable and unexpected manner. Defendants have no economic justification for executing this illegal contract.

94. The mortgage loan contract on the subject property also is unconscionable due to Defendants' failures to adequately inform Plaintiffs of the all material terms and foreseeable conditions and risks associated with executing that contract. Additionally, Defendants made pre-execution misrepresentations to Plaintiffs that, *inter alia*, they would be

able to refinance the loans.

95. The mortgage loan contract prepared by Defendants is illegally one-sided and allows Defendants enjoy usurious profits flowing from non-negotiable interest rates. Plaintiffs can never fully realize home ownership because she could never repay a mortgage which, by its terms, guaranteed a foreclosure.

96. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered economic and additional damages according to proof. Additionally, because Defendants and each of them acted with malice and oppression, Plaintiff is entitled to an award of punitive damages.

**ELEVENTH CAUSE OF ACTION**
**QUIET TITLE**
**[Against All Defendants]**

97. Plaintiff realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

98. Plaintiff seeks to establish title against all adverse claims to his interest in the subject property. Plaintiff maintains that they are the only legal owners of the subject property through two deeds of trust granting the subject property to Plaintiffs, and recorded in the Official Records of the County of Clark, Nevada, in January 2008. None of the Defendants has any right, title, interest, lien or estate in or on the subject property. Plaintiffs' interests are adverse to each Defendants' claims of ownership.

99. Plaintiffs seek to quiet title as of January 10, 2008, when they received the deeds of trust on the subject real property. Plaintiffs seek to quiet title against the claims of all Defendants and each of them. Plaintiffs therefore seek a judicial declaration that the title to the subject property is vested in them alone, and that Defendants be declared to have no estate, right, title, lien or interest in the Subject Property and be forever enjoined from asserting any estate, right, title, lien or interest

Case: 11-03038 Doc# 1 Filed: 02/27/11 Entered: 02/27/11 20:47:48 Page 25 of 26

in the subject property adverse to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Michael D. Dunn and Maria Do Carmo Dunn pray for judgment as follows:

1. For general damages in an amount over $10,000 according to proof;
2. For compensatory damages according to proof;
3. For special damages according to proof;
4 For exemplary and punitive damages according to proof;
5. For costs of suit herein incurred;
6. For an Order enjoining and/or restraining defendants from proceeding with any sale, transfer, unlawful detainer or any other action pertaining to the subject real property unless without meaningfully and in good faith offering Plaintiffs a loan modification;
7. For an award to Plaintiff for monetary damages against all Defendants jointly, severally, that Plaintiff incurred due to the need to bring this action for injunctive relief according to proof;
8. For awards of statutory damages to Plaintiffs according to proof;
9. For attorneys fees as permitted by law;
10. For treble damages as permitted by law;
11. For prejudgment interests as permitted by law; and
12. For such other and further relief as the court may deem proper.

Dated: February 27, 2011

/s/ Jamilla Moore /s/
JAMILLA MOORE
Attorney for Plaintiffs